UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CALEB NUQUAY MACKEY,

                Petitioner,              Case No. 2:19-cv-203

v.                                 Honorable Hala Y. Jarbou

CONNIE HORTON,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Caleb Nuquay Mackey is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. On May 21, 2015, following a one-day jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of armed robbery, in violation of Mich. Comp. Laws § 750.529. On June 15, 2015, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to a prison term of 20 to 50 years. Petitioner's sentence was to be served consecutively to sentences for which Petitioner was on parole when he committed the armed robbery.

        On October 2, 2019, Petitioner filed his habeas corpus petition raising nine grounds for relief, as follows:

    I.       THE PROSECUTOR VOUCHED FOR [VICTIM'S] CREDIBILITY, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.

    II.     TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO INVESTIGATE AND FAILING TO HAVE A REASONABLE TRIAL STRATEGY.

III.    TRIAL COUNSEL WAS COMPLETELY ABSENT FROM THE CRITICAL STAGE OF SENTENCING, IN VIOLATION OF THE SIXTH AMENDMENT.

IV.    PETITIONER WAS DENIED HIS COUNSEL OF CHOICE AT SENTENCING, IN VIOLATION OF THE SIXTH AMENDMENT.

V.    PETITIONER'S TRIAL ATTORNEY HAD A CONFLICT OF INTEREST THAT ADVERSELY AFFECTED HIS PERFORMANCE, IN VIOLATION OF THE SIXTH AMENDMENT.

VI.    TRIAL COUNSEL WAS ABSENT FROM THE CRITICAL PRETRIAL STAGE, IN VIOLATION OF THE SIXTH AMENDMENT.

VII.    TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ADVISE PETITIONER OF HIS RIGHT TO TESTIFY.

VIII.    THE PROSECUTOR SHIFTED THE BURDEN OF PROOF DURING CLOSING ARGUMENTS BY REFERRING TO PETITIONER'S FAILURE TO TESTIFY, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS.

IX.    APPELLATE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO RAISE HABEAS CLAIMS II–VIII ON DIRECT APPEAL.

(Pet., ECF No. 1, PageID.4–7.)  Respondent has filed an answer to the petition (ECF No. 9) stating that the grounds should be denied because they are without merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

### Discussion

## I.    Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

According to the evidence introduced at trial, on January 5, 2015, defendant went to a jewelry store where an employee, Robert Mitchell, allowed him to try on a Rolex watch.  Defendant "took off running" with the watch and Mitchell ran after him.  Notably, Mitchell testified that, during the chase, defendant placed his hand in the breast area of his jacket and stated, "I've got a gun, I've got a gun."  Mitchell testified that he feared being shot, but he continued to follow defendant.  Mitchell saw defendant get into a white car and he memorized the license plate number.

Based on information provided by Mitchell, the police soon located the vehicle and apprehended defendant.  Police recovered the watch from defendant, but they did not find a gun.  The jury convicted defendant of armed robbery.

(Mich. Ct. App. Op., ECF No. 10-5, PageID.651.)

There was no question that Petitioner had taken the watch.  The store security video generally corroborated the testimony of the salesman regarding the events in the store.  Petitioner acknowledged he took the watch when he was apprehended by police, and Petitioner had the watch in the waistband of his pants when he arrived at the police station.  Petitioner's trial turned on whether Petitioner's crime was armed robbery, as charged, the lesser-included offense of robbery, or the lesser-included offense of larceny from a person.

The trial judge instructed the jury regarding the elements of armed robbery as follows:

The defendant is charged with a crime of armed robbery.  To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt.

First, that the defendant put in fear Robert Mitchell.

Second, that the defendant did so while he was in the course of committing a larceny.  A larceny is the taking and movement of someone else's property or money with the intent to take it away from that person permanently.

In the course of committing a larceny includes acts that occurred in an attempt to commit a larceny, or during the commission of the larceny, or in flight, or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property or money.

Third, Robert Mitchell was present while defendant was in the course of committing the larceny.

Fourth, that while in the course of committing the larceny, the defendant A) possessed a weapon designed to be dangerous and capable of causing death or serious injury, or B) represented orally or otherwise that he was in possession of a weapon.

(Trial Tr., ECF No. 10-2, PageID.467–468.)  The trial court also instructed the jury regarding the crime of robbery.  The elements were the same as the elements of armed robbery without the fourth element regarding a weapon.  (*Id.*, PageID.468.)  The trial judge then explained the elements of larceny which were, essentially, the elements of robbery without the element that the victim was "put in fear." (*Id.*, PageID.468–469.)  In a nutshell, therefore, larceny from a person who is put in fear is robbery and larceny from a person who is put in fear by the use or threatened use of a weapon is armed robbery.

It was beyond dispute that Petitioner had committed a larceny.  The victim's testimony that Petitioner had said "I've got a gun" and the victim's testimony that Petitioner's statement caused the victim to slow his pursuit because of fear of getting shot, drastically changed the nature of the crime and the potential penalty.

Petitioner has a significant criminal history.  That history impacted his potential sentence in two ways.  First, it resulted in a statutory sentence enhancement as a fourth habitual offender.  Mich. Comp. Laws § 769.12.  The maximum end of the minimum sentence range specified by the Michigan Sentencing Guidelines is doubled for a fourth habitual offender.  Second, Petitioner's criminal history resulted in the assessment of a significant number of Prior Record Variable points.  Petitioner's Prior Record Variable points were sufficient to put him in the highest category for such points in any sentencing grid.

Converting the fourth habitual offender enhancement and the significant Prior Record Variable points to actual minimum sentence range numbers:  if Petitioner were convicted of armed robbery, his minimum sentence range would be 108 to 360 months, Mich. Comp. Laws § 777.62; if Petitioner were convicted of robbery, his minimum sentence range would be 29 to 114

months, Mich. Comp. Laws § 777.64; and if Petitioner were convicted of larceny from the person, his minimum sentence range would be 10 to 46 months, Mich. Comp. Laws § 777.65.

Prior to trial, the prosecutor offered Petitioner the opportunity to plead guilty to armed robbery—as a first offender, not a habitual offender—in exchange for a sentence recommendation of 5 to 15 years.  (Trial Tr., ECF No. 10-2, PageID.255.)  Petitioner rejected that offer before trial and, although the prosecutor had taken the offer off the table at trial, Petitioner rejected the offer at trial as well.  (*Id*., PageID.255–256.)

As a first offender, Petitioner's minimum sentence range for armed robbery would be 108 to 180 months.  Mich. Comp. Laws § 777.62.  The bargain did not contemplate the trial judge's agreement with the sentence recommendation; thus, even if the prosecutor recommended a sentence of 5 to 15 years, the trial judge might well have sentenced Petitioner to at least the guidelines minimum, minimum of 9 years or the judge could have sentenced Petitioner to a longer minimum sentence, as long as 15 years.  It is possible that Petitioner rejected the plea because those potential minimums were significantly longer than the minimum sentences that would follow a jury conviction of robbery or larceny.  Petitioner claims otherwise: "I didn't take the plea because I am not guilty of robbery . . . ."  (Pet'r's Mich. Ct. App. *Pro Per* Suppl. Br., ECF No. 10-5, PageID.641.)

The trial testimony took a little over an hour.  The jury deliberated for about twenty minutes before finding Petitioner guilty as charged.  A month later, the trial judge sentenced Petitioner as described above.

Petitioner directly appealed his conviction to the Michigan Court of Appeals.  In the brief that Petitioner filed with the assistance of counsel, he raised two issues, including the issue he raises as habeas ground I in this petition.  (Pet'r's Mich. Ct. App. Br., ECF No. 10-5,

PageID.579.)  Petitioner also filed a *pro per* supplemental brief raising several issues relating to counsel's ineffective assistance.  (Pet'r's Mich. Ct. App. *Pro Per* Suppl. Br., ECF No. 10-5, PageID.638–643.)  By opinion issued October 11, 2016, the Michigan Court of Appeals rejected Petitioner's challenges and affirmed the trial court.  (Mich. Ct. App. Op., ECF No. 10-5, PageID.651–654.)

Petitioner, again with the assistance of counsel, filed an application for leave to appeal to the Michigan Supreme Court.  (Pet'r's Appl. for Leave to Appeal, ECF No. 10-6, PageID.655–673.)  Petitioner raised only the two issues raised by counsel in the court of appeals, not the issues raised in the court of appeals *pro per* supplemental brief.  (*Id*., PageID.658.)  By order entered May 31, 2017, the Michigan Supreme Court denied leave to appeal.  (Mich. Order, ECF No. 10-6, PageID.688.)

Petitioner then returned to the trial court and filed a motion for relief from judgment.  (Pet'r's Mot. for Relief from J., ECF No. 10-4.)  Petitioner raised several issues, generally based on the ineffective assistance of trial counsel and appellate counsel, but including a claim that the prosecutor, during closing argument, had improperly referenced Petitioner's choice to not testify at trial and effectively shifted the burden of proof to Petitioner.  By order entered February 16, 2018, the trial judge denied Petitioner's motion for relief from judgment. (Kalamazoo Cnty. Cir. Ct. Order, ECF No. 10-7, PageID.810–818.)

Petitioner sought leave to appeal the denial of his motion for relief from judgment, first to the Michigan Court of Appeals, and then to the Michigan Supreme Court.  Both appellate courts denied leave to appeal, the court of appeals by order entered December 13, 2018, and the supreme court by order entered July 29, 2019.  (Mich. Ct. App. Order, ECF No. 10-7, PageID.859; Mich. Order, ECF No. 10-8, PageID.1008.)  This petition followed.

## II.        AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits.  *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"— for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.     Prosecutorial misconduct-vouching (habeas grounds I and IX)

As set forth above, the credibility of the victim regarding Petitioner's statement that he had a gun and the effect of that statement on the victim was of critical importance during the trial.  Petitioner's trial counsel, in closing, attacked the victim's credibility, suggesting that the victim's claims were fundamentally inconsistent with the victim's actions in continuing to follow Petitioner even after the alleged threat.  Petitioner claims that the prosecutor went too far in responding to that argument, by impermissibly vouching for the credibility of the victim and commenting on Petitioner's failure to testify, effectively and impermissibly shifting the burden of proof to Petitioner.

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

        In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11–12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id.* at 12–13; *Darden*, 477 U.S. at 181–82; *Donnelly*, 416 U.S. at 646–47; *Berger v. United States*, 295 U.S. 78, 84–85 (1935).  "[A] prosecutor's comments violate the defendant's right to due process only if, ***in context***, they 'undermine[d] the fundamental fairness of the trial and contribute[d] to a miscarriage of justice.'" *Winowiecki v. Gidley*, No. 20-1461, 2020 WL 6743472, at *2 (6th Cir. Sept. 8, 2020) (quoting *Young*, 470 U.S. at 16) (emphasis added); *see also United States v. McQuarrie*, 817 F. App'x 63, 81 (6th Cir. 2020) ("[C]ontext is key . . . .").

        "[T]he government may not rely on prejudicial facts not in evidence when making its closing arguments." *United States v. Roach*, 502 F.3d 425, 434 (6th Cir. 2007).  Nonetheless, "[a] prosecutor has 'leeway to argue reasonable inferences from the evidence' during closing arguments." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (*quoting Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "the Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'"  *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

## A.      Vouching

The jurors were called upon to determine whether the victim's claims regarding Petitioner's statement: "I've got a gun", were credible.  Not surprisingly, therefore, the prosecutor's closing and rebuttal emphasized witness credibility.  The prosecutor stated that the victim had "no special reason to lie," that "he has no reason to lie about it," that "he has no motivation to tell you something that's not true," that "he has no reason to lie," and that "[t]here's no evidence that [the victim] has motivation to lie."  (Trial Tr., ECF No. 10-2, PageID.450, 453–455.)

The Michigan Court of Appeals' analysis of Petitioner's claim reads as follows:

> We review unpreserved claims of prosecutorial misconduct for plain error. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).  "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings."  *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).  "Further, we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect."  *Id*. at 329–330.

"Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *Unger*, 278 Mich App at 236.  "[T]he prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995).  However, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004).

In this case, defendant presents this Court with several quotes selected from the prosecutor's closing argument in which the prosecutor stated that Mitchell had "no special reason to lie" and, more specifically, that Mitchell did not know defendant, Mitchell did not receive any type of bonus or gift if defendant was found guilty, and Mitchell had no "motivation to tell [the jury] something that's not true about the way he felt."  Considering the statements in context, the prosecutor did not personally vouch for Mitchell or suggest any special knowledge concerning Mitchell's credibility, but instead accurately recounted Mitchell's testimony that he did not know defendant and would not receive a bonus from his involvement. From the evidence, the prosecutor reasonably argued that Mitchell had no reason to lie.  This was not improper, particularly when Mitchell's credibility was an important and contested issue at trial.  See *id*.; *Bennett*, 290 Mich App at 478–479.

(Mich. Ct. App. Op., ECF No. 10-5, PageID.653.)

The court of appeals considered each objectionable excerpt identified by Petitioner and assessed whether it was a credibility argument based on the evidence or reasonable inferences from the evidence—which would be permissible—or whether it was premised on some implied special knowledge concerning the witness's truthfulness—which would be improper vouching or bolstering.  In each instance, the court concluded that the prosecutor's argument was based on the evidence or reasonable inferences therefrom.

"The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers:  such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the

imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *Young*, 470 U.S. at 18–19 (citing *Berger*, 295 U.S. at 88–89). Yet "a prosecutor may ask the jury to draw reasonable inferences of credibility from the evidence presented . . . ." *Willoughby v. White*, 786 F. App'x 506, 513 (6th Cir. 2019). Thus, the court of appeals analytical approach is entirely consistent with clearly established federal law.

Critically, Petitioner never responds to the court of appeals' determinations regarding the record support for the prosecutor's credibility arguments. The court of appeals' determinations regarding the record are presumed to be true. Petitioner can rebut the presumption with clear and convincing evidence. He does not respond to those determinations at all, much less offer clear and convincing contrary evidence. The Court has examined the evidentiary support for the prosecutor's witness credibility arguments as identified by the Michigan Court of Appeals. The court of appeals' determinations that the prosecutor's argument did not bear the hallmarks of impermissible vouching or bolstering, but were instead fair comment on the evidence regarding credibility, is well-supported by the record. Moreover, the appellate court's conclusion that the comments were not impermissible vouching or prosecutorial misconduct is not contrary to, or an unreasonable application of, the clearly established federal law of *Darden* or *Young*. Accordingly, Petitioner is not entitled to habeas relief on this claim.

**B.      Shifting the burden of proof**

Petitioner next contends that the prosecutor committed misconduct and thereby violated Petitioner's right to due process when the prosecutor shifted the burden of proof during closing argument by referencing Petitioner's failure to take the stand. Petitioner raised the argument for the first time in his motion for relief from judgment. Petitioner challenged two parts of the prosecutor's rebuttal argument:

There's only evidence that he was afraid, because he said that.  Mr. Sappanos wants you to ignore that.  I guess to find that either Mr. Mitchell is lying about how he felt or mistaken about how he felt.  He has no reason to lie, so you should discount that.  And he has no—there has been no evidence for you to find that he doesn't know how he felt that day when he was able to recount so many facts about the incident from memory.

Of course. he's going to know how he felt.  Why would you ignore that?  The only reason you would ignore that is to give the defendant the benefit of the doubt.  There's no evidence to show that he's entitled to a benefit of the doubt.

\*    \*    \*

So, there's evidence to believe that the defendant has a motivation to lie because he doesn't want an armed robbery charge.  But, there's no evidence that Mr. Mitchell has motivation to lie.  There's no reason for you not to believe him.  There's no reason for you to give the defendant the benefit of the doubt.  There's no reason.

(Trial Tr., ECF No. 10-2, PageID.454–455; Pet'r's Mot. for Relief from J., ECF No. 10-4, PageID.554.)  Based on these comments, Petitioner argues:

During the prosecution[']s closing arguments he stressed the fact that there was no evidence to support the defendant deserving the benefit of the doubt and that there was no reason for the jury not to believe Robert Mitchell.  The only person who could have provided these reasons was the defendant himself.  He is in fact the only person besides Robert Mitchell who could have provided the testimony that he in fact did deserve the benefit of the doubt.

(Pet'r's Mot. for Relief from J., ECF No. 10-4, PageID.555.)  The trial court summarily rejected the claim.  (Kalamazoo Cnty. Cir. Ct. Order, ECF No. 10-7, PageID.817–818) ("Defendant's substantive rights were not affected by the prosecutor's 'alluding' to Defendant not testifying because the prosecutor was simply arguing his case by weighing the evidence before the jury.").

Under the Fifth (and Fourteenth) Amendment, the prosecution may not comment on a defendant's refusal to testify. *See Griffin v. California*, 380 U.S. 609, 614 (1965).  And the prosecutor may not shift the burden of proof to the defendant. *Patterson v. New York*, 432 U.S. 197, 215 (1977).  Whether a prosecutor's comment violates the Fifth Amendment turns on content and context:  (1) Did the prosecutor "manifestly intend[]" to comment on the defendant's Fifth

14

Amendment right or would a jury "naturally and necessarily" interpret the remark that way; (2) was it an isolated occurrence or part of an extensive pattern; (3) how strong was the prosecution's other evidence and (4) did the judge give a curative instruction?  *Bowling*, 344 F.3d at 514 (6th Cir. 2003).

Petitioner argues that the prosecutor's statements are the equivalent of claiming that the testimony of the victim regarding his fear were "uncontradicted."  Courts have cautioned against such references.  Petitioner suggests that because only he could have contradicted the evidence, the prosecutor was effectively commenting on Petitioner's failure to testify.  But a reference to "uncontradicted" evidence "does not reflect on a defendant's failure to testify if evidence other than the defendant's testimony could have contradicted it."  *Webb v. Mitchell*, 586 F.3d 383, 396 (6th Cir. 2009) (citing *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006) and *Raper v. Mintzes*, 706 F.2d 161, 164 (6th Cir. 1983)).  Petitioner's argument is particularly weak because Petitioner is not the *only* person who could have commented regarding the victim's state of mind, first because Petitioner could not have offered any direct testimony regarding what was going on in the victim's head, and second, because the victim may have made statements to others, including the police, about how he felt during the incident.

Additionally, "while a prosecutor may not comment on a defendant's silence, 'a prosecutor is entitled to comment on a defendant's failure to call witnesses to contradict the government's case' so long as the prosecutor does not suggest that the defendant bears the burden of proof."  *Perkins v. McKee*, 411 F. App'x 822, 832 (6th Cir. 2011) (quoting *United States v. Clark*, 982 F.2d 965, 968–69 (6th Cir. 1993)).  Indeed, where "factual theories [are] presented in the closing argument for the defense, . . . the prosecutor [is] entitled to point out the lack of evidence supporting those theories."  *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005).

15

During the prosecutor's initial closing argument, he reminded the jury of the victim's direct testimony that he was put in fear and that he fell back from the pursuit as a result. Defense counsel, in reply, invited the jury to infer that the victim was not put in fear because he continued to follow Petitioner. The prosecutor, in rebuttal, suggested that there was no evidence to call into question the victim's statements regarding his fear. In other words, the prosecutor was only "point[ing] out the lack of evidence supporting" the defense theory. *Forrest*, 402 F.3d at 686.

Moreover, immediately after the prosecutor uttered the purportedly objectionable sentences, the court instructed the jury that:

> It is my duty to instruct you on the law. You must take the law as I give it to you. If a lawyer has said something different about the law, you must follow what I say.
>
> *        *        *
>
> The prosecutor must prove each element of the crime beyond a reasonable doubt. The defendant is not required to prove his innocence or to do anything. If you find that the prosecutor has not proven every element beyond a reasonable doubt, then you must find the defendant not guilty.
>
> *        *        *
>
> Every defendant has the absolute right not to testify. When you decide this case, you must not consider the fact that he did not testify. It must not affect your verdict in any way.
>
> *        *        *
>
> The lawyers' statements and their closing arguments are not evidence.

(Trial Tr., ECF No. 10-2, PageID.459, 460, 461.)  Jurors are presumed to follow their instructions. *See, e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

There is nothing in the prosecutor's comments that suggests that only Petitioner's testimony could have rebutted the victim's statements or that Petitioner carried the burden of proof and, even if the allegedly objectionable sentences might have suggested so, the jurors were immediately disabused of that notion by the court's instructions, which promptly followed.

16

Petitioner has failed to show that the trial court's rejection of his burden-shifting challenge to the prosecutor's closing argument is lacking in justification in any way, much less that the rejection is so lacking in justification that every fairminded jurist would disagree with it.  Therefore, Petitioner is not entitled to habeas relief on this claim.

## IV.    Counsel's failure to investigate and develop a trial strategy (habeas ground II)

Petitioner faults counsel for not spending more time with his client before trial to investigate the charges and develop a strategy for the defense.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

17

The state court rejected this ineffective assistance claim twice: first, when Petitioner raised it on direct appeal; and again when Petitioner raised it in his motion for relief from judgment. The trial court rejected Petitioner's claim applying the following standard:

> To establish ineffective assistance of counsel, a Defendant must show that: 1) counsel's performance fell below an objective standard of reasonableness and 2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. In examining whether defense counsel's performance fell below an objective standard of reasonableness, a Defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy. *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

(Kalamazoo Cnty. Cir. Ct. Order, ECF No. 10-7, PageID.838.) The court of appeals relied on the same standard:

> To demonstrate ineffective assistance of counsel, "the defendant must show that counsel's performance fell below an objective standard of reasonableness" and "that, but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). "The defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

(Mich. Ct. App. Op., ECF No. 10-5, PageID.653–654.) The trial court derived its statement of the standard directly from the clearly established federal law of *Strickland*; the court of appeals cited state authority, but that authority, in turn, cites *Strickland* as the source. *People v. Armstrong*, 806 N.W.2d 676, 680–681 n.9 (Mich. 2011). Thus, it cannot be said that the state court applied the wrong standard. To prevail Petitioner must show that the state court applied the standard unreasonably.

When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those

circumstances, the question before the habeas court is "whether there is any reasonable argument

that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–

41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of

prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*,

562 U.S. at 102).

      The trial court applied the *Strickland* standard to reject Petitioner's claim as

follows:

> Defendant does not elaborate on how the investigation was deficient or how
> a more thorough one would have influenced his outcome.  This argument could
> have been addressed on appeal and no facts exist on the record to support
> Defendant's claim.  Although unsuccessful, [trial counsel's] trial strategy argument
> was to reduce Defendant's conviction from armed robbery to unarmed robbery [or
> larceny], arguing that Defendant did not use a weapon and the victim's claims of
> fear were irrational since he chased the Defendant following the theft.

(Kalamazoo Cnty. Cir. Ct. Order, ECF No. 10-7, PageID.838–839.)  The Michigan Court of

Appeals reached the same conclusion regarding the claim:

> Defendant first claims that counsel did not properly investigate and had "no
> strategy whatsoever" at trial.  However, defendant does not explain how the
> investigation was deficient or how more thorough investigation would have
> affected the outcome.  Furthermore, there is no information on the record before
> this Court regarding defense counsel's investigation of this case, meaning that
> defendant has failed to establish the factual predicate of his claim.  See *id.*
> Regarding counsel's strategy, contrary to defendant's representations on
> appeal,  counsel presented a reasonable defense to the jury, arguing that, while
> defendant committed a larceny, he was not guilty of armed robbery because there
> "never was a gun" and Mitchell's claims of "fear" did not "make sense" given that
> he continued to pursue defendant.   "A particular strategy does not constitute
> ineffective assistance of counsel simply because it does not work."  *Matuszak*, 263
> Mich App at 61.

(Mich. Ct. App. Op., ECF No. 10-5, PageID.654.)

      Petitioner does not address the state courts' factual determination that there is no

record support for his claim that additional investigation would have yielded some benefit.

Petitioner's submissions to this Court certainly do not offer any possible benefit that further

investigation might have yielded.  Petitioner's guilt of larceny was simply beyond dispute.  Only Petitioner and the victim were present to hear the alleged threat that Petitioner had a gun. Petitioner's guilt of something in addition to larceny hinged entirely on that threat.

The trial court's factual determination regarding the record—that there was nothing in the record that showed any possible benefit from additional investigation—is presumed true on habeas review.  Petitioner can rebut that determination with clear and convincing evidence.  He offers no evidence at all.  The Court has pored over the state court record and found nothing to call into question the state court's determination.

Moreover, the state court's conclusion that the trial counsel's strategy was a reasonable one is unassailable.  The prosecutor would not offer a plea to any charge except armed robbery, (Sentencing Tr., ECF No. 10-3, PageID.492) ("[N]o plea was [offered] that would have affected his [minimum minimum] guidelines in this case. . . . Caleb would have willingly pleaded to larceny from the person or even an unarmed robbery.").  And Petitioner refused to enter a plea to armed robbery.  Counsel's only choice to improve Petitioner's position was to undercut the testimony of the victim regarding (1) Petitioner's threat that he had a gun or (2) the impact that threat had on Petitioner.  That is the strategy counsel employed.

Moreover, counsel did not request lesser-included instructions for robbery or larceny.  Counsel made Petitioner's defense an "all or nothing" proposition—if the jurors believed the victim's testimony regarding the threat and his fear, Petitioner would be convicted of robbery; if they did not, he would be acquitted.  (Trial Tr., ECF No. 10-2, PageID.445.)  For counsel to bet the entire defense on the credibility of the victim's testimony regarding the threat and his fear was a risky strategy, but it was not unreasonable.

The Sixth Circuit considered a similar claim that an "all or nothing" strategy constituted ineffective assistance in *Kelly v. Lazaroff*, 846 F.3d 819 (6th Cir. 2017). The *Kelly* court conducted a *de novo* review of the objective reasonableness of counsel's decision to assess whether appellate counsel should have raised the issue. The court concluded that counsel's decision to pursue a "'high risk, high reward' . . . 'all or nothing' defense . . . did not fall below the bar of professionally competent assistance." *Kelly*, 846 F.3d at 830. The same conclusion is warranted here.

Additionally, the "all or nothing" strategy was eventually undercut by the prosecutor. The prosecutor requested instructions on robbery and larceny and the trial court, recognizing that the jurors might be persuaded by defense counsel's arguments, provided those instructions. Thus, even if counsel's pursuit of the "all or nothing" strategy were professionally unreasonable, Petitioner suffered no prejudice.

Petitioner has failed to show that the state court's conclusion regarding counsel's alleged failure to investigate or to develop a defense strategy is contrary to, or an unreasonable application of, *Strickland*, the clearly established federal law regarding ineffective assistance of counsel. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## V.    Trial counsel's absence at sentencing (habeas ground III)

When Petitioner was sentenced, another member of his trial counsel's firm appeared on Petitioner's behalf. In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court noted that it had "found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n. 25. Petitioner seizes upon that language—"totally absent." He notes that his trial counsel was "totally absent" at sentencing and proclaims that he has, therefore,

suffered constitutional error.  Although Petitioner's argument uses the words of *Cronic*, it ignores the meaning of the words and their constitutional significance.

Total absence is a problem "because of the effect it has on the ability of the accused to receive a fair trial."  *Id*. at 658.  But that effect is only felt if there is a "complete denial of counsel," not because a particular attorney is not at a particular proceeding.  *Id*.; *see also Roe v. Flores-Ortega*, 528 U.S. 470, 471 (2000) ("The ***complete denial of counsel*** during a critical stage of a judicial proceeding, however, mandates a presumption of prejudice because 'the adversary process itself' has been rendered 'presumptively unreliable.'") (emphasis added); *Ray v. Maclaren*, 655 F. App'x 301, 308 (6th Cir. 2016) (court explained that *Cronic* stand for the proposition "that a trial is unfair if the accused is ***deprived of counsel*** during a critical stage of trial) (emphasis added).

Petitioner was not denied counsel in any sense.  Attorney Garrity ably represented Petitioner at sentencing, effectively arguing for a reduction in Petitioner's Offense Variable points from 25 to 5, which reduced Petitioner's minimum sentence range from 126 to 420 months to 108 to 360 months.  Petitioner does not suggest how Attorney Sappanos's presence might have yielded a more favorable result.

Moreover, Petitioner cannot show that the state court's rejection of his claim is contrary to, or an unreasonable application of clearly established federal law "[b]ecause no United States Supreme Court precedent deals with the issue of 'stand in' counsel" in place of absent counsel.  *Carroll v. Renico*, 475 F.3d 708, 713 (6th Cir. 2007).  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## VI.    Denial of Petitioner's counsel of choice at sentencing (habeas ground IV)

Petitioner next attempts to squeeze Attorney Garrity's representation of Petitioner at sentencing into a different Sixth Amendment box:  the right to counsel of one's choice.  The

Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. One element of that right is the right to have counsel of one's choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). However, the right to counsel of choice is not without limits. *Id.* at 148; *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007). "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Gonzalez-Lopez*, 548 U.S. at 151 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)). Nonetheless, a criminal defendant who can afford his own attorney has the qualified right to his chosen attorney. *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1351 (6th Cir. 1993); *see also Burton v. Renico*, 391 F.3d 764, 771-72 (6th Cir. 2004) (holding that "a defendant has a right to a '*fair opportunity* to secure counsel of his own choice'") (emphasis in original) (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Petitioner claims that right was violated when Attorney Garrity appeared on his behalf at sentencing. Petitioner claims he chose Attorney Sappanos, not Attorney Garrity.

Petitioner's challenge is misdirected. Perhaps Petitioner did not have his chosen counsel at sentencing; but the denial of choice was not the fault of the state. There is nothing in the record to suggest that the trial court forced Attorney Garrity on Petitioner, nor is there any evidence in the record to suggest that Petitioner sought a continuance to permit Attorney Sappanos to appear on his behalf at sentencing. In fact, there is nothing in the record to indicate that Attorney Sappanos could not attend the sentencing and there is nothing in the record to suggest that Petitioner objected to Attorney Garrity's representation at the time of sentencing. Based on the record before the Court, it appears Attorney Sappanos chose not to appear on Petitioner's behalf

at sentencing.  That type of "denial" does not implicate the Sixth Amendment right to choose one's counsel.  Petitioner is not entitled to habeas relief on this claim.

## VII.    Attorney Sappanos's conflict of interest (habeas issue V)

Petitioner next contends that his counsel had a conflict of interest because he had patronized the jewelry store that Petitioner had robbed.  The trial court rejected Petitioner's "conflict of interest" claim in summary fashion.  (Kalamazoo Cnty. Cir. Ct. Order, ECF No. 10-7, PageID.839) ("Defendant's claim is not supported by the record.").

Petitioner does not identify any particular shortcoming in counsel's representation that arose from the alleged conflict.  Presumably, Petitioner complains of the conflict to avoid the requirement that he demonstrate prejudice under *Strickland*.

Ordinarily, to prevail on an ineffective-assistance-of-counsel claim, a petitioner must show that his counsel's performance was deficient and that the deficiency so prejudiced his defense that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 687, 694.  However, prejudice is presumed if counsel is shown to have been burdened by an actual conflict of interest.  *Id.* at 692 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980)).  Yet, even in the case of such a conflict of interest, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"  *Id.* (quoting *Sullivan*, 446 U.S. at 350).  Petitioner has not and cannot make this showing.

Petitioner does not suggest that counsel "actively represented conflicting interests"; therefore, his claim must be based on "an actual conflict of interest [that] adversely affected his lawyer's performance."  *Id*.  In *McElrath v. Simpson*, 595 F.3d 624 (6th Cir. 2010), the Sixth Circuit Court of Appeals explained the showing necessary to establish such an "actual conflict":

24

> To find an actual conflict, we require petitioner to "point to specific instances in the record to suggest an actual conflict or impairment of [his] interests" and "demonstrate that the attorney made a choice between possible alternative courses of action" . . . . Counsel's choices between alternative courses is evidence of adverse effect only if it is not part of a legitimate strategy, "judged under the deferential review of counsel's performance prescribed in *Strickland*."

*McElrath*, 595 F.3d at 624–625 (citations omitted).  As explained above, however, Petitioner has failed to show that counsel's choices in his case were not part of a legitimate strategy. Accordingly, Petitioner has failed to show the type of "actual conflict" that might permit him to avoid the prejudice requirement.  Petitioner has not shown how his counsel's prior purchase of a watch from the jewelry store that Petitioner robbed created a conflict that affected counsel's strategic choices.  Therefore, Petitioner has also not shown that the state court's rejection of the claim is contrary to, or an unreasonable application of, clearly established federal law, and he is not entitled to habeas relief.

## VIII.   Trial counsel was absent from the pretrial stage (habeas ground VI)

Petitioner next argues that Attorney Sappanos was not only absent from the sentencing, but he was also absent from the entire pretrial stage of Petitioner's prosecution.  The argument is a restatement of Petitioner's claim that counsel failed to investigate and develop a defense strategy.  The findings of the trial court—findings presumed true on habeas review— indicate that counsel was present during the pretrial stage.  Petitioner has failed to rebut the presumption of correctness with clear and convincing evidence.  Therefore Petitioner's "total absence" claim fails.  Because Petitioner has not shown that the state court's rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law, Petitioner is not entitled to habeas relief on this claim.

**IX.    Trial counsel was ineffective for failing to advise Petitioner of his right to testify (habeas ground VII)**

Petitioner claims that counsel never informed Petitioner that he had the right to testify.  Neither the Michigan Court of Appeals nor the trial court directly addressed this claim.

Petitioner states:

At no time did the defense counsel ever inform me that I could testify.  He never inquired what my testimony would have been.  During trial I attempted to inform counsel I wanted to testify.

I was informed by counsel if I continued to talk, I could be forced to leave the court room and watch my trial on a monitor in the back.  I was never informed I had the right, and never waived my right.

Had I been allowed to testify I would have informed the jury that I did not tell Mr. Mitchell I had a gun and that I was under the impression that a security guard was chasing me only because Mr. Mitchell was screaming at the top of his lungs ["]hey you! Stop! Freeze! Stop![”] It was then that I replied ["]don't shoot I don't have a gun[”], before turning the corner with Mr. Mitchell still hot on my trail.  I never fumbled for any keys.  As I was driving a 2014 Chrysler 300C that is equipped with a keypad instead of a car key.  It does not require any keys to open the door and it's a push start or Fob.  I would have gladly informed the jury that this is something I have done multiple times due to my gambling problem and I've never used a gun or even acted like I was in possession of a weapon of any kind. As I was running I was trying to put the watch in my underwear.  I never acted or attempted to act as if I was reaching for a weapon.

(Pet'r's Aff. of Fact Part 1, ECF No. 10-4, PageID.533–534) (paragraph numbers omitted).

Petitioner's statements are significant, both for the information they include and the information that is conspicuously absent.  Although Petitioner is adamant that counsel never informed Petitioner of his right to testify, he never suggests that he did not know he had the right to testify.  Whether or not the Petitioner would testify was an important issue at trial because the prosecutor had moved for leave to introduce evidence of Petitioner's prior similar crimes.  The trial court ruled that the prosecutor could introduce evidence of a prior "larceny from a person" conviction from Kalamazoo County if Petitioner chose to testify.  (Trial Tr. ECF No. 10-2, PageID.364–368.)

Petitioner's implication that he was unfamiliar with the right is belied by his significant experience in the criminal courts.  This was Petitioner's third trial in Kalamazoo County Circuit Court.   *See*  https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=678163 (visited May 27, 2021).  And Petitioner had previously entered a guilty plea in the Oakland County courts to a charge of unlawfully driving away an automobile.  The standard "Advice of Rights" form executed in connection with such pleas advises the pleader of the right to testify at trial.  For Petitioner to claim he was unaware of his right to testify is disingenuous.

Defense counsel strenuously opposed the prosecutor's motion to introduce Petitioner's prior convictions.  Counsel argued that a ruling in the prosecutor's favor would prejudice Petitioner and impact the decision to testify.  Petitioner, quite obviously, did not feel the same way—he offered to tell the jurors his entire extensive criminal history to support his claim that he was not violent and that he would never put a victim in fear, especially not with the threat of a firearm, just to facilitate his escape.  Petitioner's suggestion that there is some sort of larcenist code of honor might be more persuasive in the halls of the Chippewa Correctional Facility than in the jury room.

Because Petitioner's claim does not indicate that he was unaware of his right to testify, he cannot show prejudice if, indeed, counsel did not specifically inform Petitioner of that right.  Moreover, to the extent counsel indicated to Petitioner that Petitioner should not testify, on this record, that advice was entirely reasonable.  It was plainly counsel's strategy to avoid informing the jury the Petitioner had been previously convicted of similar crimes because that information would have been prejudicial.  Courts have recognized that keeping a defendant off the stand to avoid the prejudicial effects caused by evidence of other convictions is a sound trial strategy.  *See, e.g., Flood v. Phillips*, 90 F. App'x 108, 118 (6th Cir. 2004); *United States v.*

*Norwood*, 798 F.2d 1094, 1100 (7th Cir. 1986); *Matney v. Armontrout*, 956 F.2d 824, 826 (8th Cir. 1992).  Counsel's actions in pursuit of that sound trial strategy are not professionally unreasonable. Accordingly, Petitioner has failed to demonstrate that counsel rendered ineffective assistance by advising Petitioner to not testify.

## X.    Ineffective assistance of appellate counsel

Petitioner contends that his appellate counsel was ineffective for failing to raise the issues that Petitioner presented in his motion for relief from judgment.  The trial court disagreed:

> In response to Defendant's request that appellate counsel bring a number of issues before the appeals court, counsel asked defendant to communicate these claims in writing. Defendant claims to have produced the extensive list of claims detailed in this order, but appellate counsel did not include every issue in her argument to the appeals court. An appellate counsel's decision not to present weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance.  *Jones v Barnes*, 463 US 745, 752; 103 S Ct 3308, 3313; 77 L Ed 2d 987 (1983).  Nor is the failure to assert all arguable claims sufficient to overcome the presumption that counsel functioned as a reasonable appellate attorney in selecting the issues presented.  *People v Reed,* 449 Mich 375, 391; 535 NW2d 496 (1995).

(Kalamazoo Cnty. Cir. Ct. Order, ECF No. 10-7, PageID.817.)

The trial court's resolution is entirely consistent with clearly established federal law.  An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 689.  As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259,

287–88 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."  *Id.* at 288.

As set forth fully above, the arguments that Petitioner's appellate counsel chose to forego were not only of lesser merit than the argument raised; the arguments were also of no merit whatsoever.  The Sixth Circuit has held that "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'"  *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  *See also Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010).  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Therefore, Petitioner has failed to show that the state court's rejection of the ineffective assistance of appellate counsel claim is contrary to, or an unreasonable application of, clearly established federal law.  Petitioner is not entitled to habeas relief on this claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's denial of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:    August 20, 2021                              /s/ *Maarten Vermaat*

                                                                Maarten Vermaat
                                                                United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).